No. 57,339

IN THE MATTER OF MARVIN PENDERGRAFT, *Respondent.*

(695 P.2d 1289)

This original proceeding in discipline involves two separate complaints filed by Arno Windscheffel, Disciplinary Administrator, against Marvin Pendergraft, an attorney admitted to the practice of law in the State of Kansas. The complaints will be considered separately.

## W-3052

William E. Wilson, an inmate at the Kansas State Penitentiary at Lansing, Kansas, complained to the disciplinary administrator about the respondent. His complaint was heard by a panel of the Kansas Board for Discipline of Attorneys which, in its report to the Board, made the following findings of fact:

"2. Complainant at all times relevant herein was an inmate at Lansing Prison.

"3. On February 17, 1981, Complainant filed a pro se federal court case based on a claim for deprivation of his civil rights under 42 U.S.C. § 1983. Subsequent to the filing of his case, complainant wrote respondent asking respondent to represent him in his civil case, 81-3053.

"4. On April 10, 1981, respondent replied to complainant's letter signifying his interest in the case. Respondent, at the same time, sent a contingent fee agreement to be signed by the complainant. The contingent fee agreement was executed and returned to the respondent.

"5. On April 29, 1981, respondent formally entered his appearance in the case as counsel for complainant, requested a jury trial, and filed a Motion to Amend the Complaint. On May 6, 1981, respondent wrote a letter to complainant stating that he agreed to take the case. In May, respondent met with the complainant to discuss the merits of the case.

"6. Interrogatories were sent to respondent on May 7, 1981. Complainant answered them in full and returned the answers to the respondent on May 20, 1981. On April 9, 1982, defendant filed a Motion to Compel Answers to these interrogatories. Respondent finally served the Answers on June 1, 1982, more than one year after the answers were completed and sent to respondent.

"7. Respondent had only one contact with complainant after the initial interview in May of 1981. In August, 1982, respondent told complainant he was coming to Lansing. Respondent showed up with opposing counsel and complainant had his deposition taken without any prior notice. That was the last contact respondent had with complainant until this hearing despite many letters and phone calls to respondent from complainant.

"8. Defendant filed a Motion for Summary Judgment in Federal Case No. 81-3053 on October 15, 1982. Complainant got no notice of the Motion from respondent.

"9. Over a year after the Motion for Summary Judgment was filed, on November 28, 1983, respondent requested extension of time to respond. Respondent admitted that the case had been 'lost for a while' and had been 'sitting on the back bar' because he had concluded that the case had little merit. Judge Saffels gave respondent until January 3, 1984, to file a response. The response was finally filed on January 2, 1984."

The panel concluded that respondent had neglected a legal matter entrusted to him in violation of DR 6-101(A)(3) (232 Kan. clxxxvi) and recommended he be disciplined by public censure. The respondent filed no exceptions to the panel's report.

## W-3059

Sharon Glaze filed her complaint with the disciplinary administrator as a result of respondent's representation of her in a divorce action. The complaint was heard by the same panel of the Board for Discipline of Attorneys which heard No. W-3052. The panel made the following findings of fact:

"2. On September 21, 1982, Sharon Glaze met with Respondent in his office to discuss the filing of a divorce action. Mrs. Glaze completed a questionnaire presented to her by Respondent. Respondent told Mrs. Glaze that a minimum fee for his representation would be $600.00.

"3. In the September 21, 1982, conference between Mrs. Glaze and Respondent, the Respondent agreed that for the $600.00 fee he would file the divorce action, attempt to collect any unpaid temporary support payments and attempt to negotiate a settlement.

"4. On October 13, 1982, Mrs. Glaze had a second appointment with Respondent. She did not meet with Respondent on that date but signed the Petition for a divorce. On October 26, 1982, Mrs. Glaze paid the requested $600.00 fee and the court costs deposit.

"5. The Petition for divorce signed by Mrs. Glaze was filed in the District Court of Sedgwick County, Kansas, on November 9, 1982, and docketed as Case No. 82-D-3473. A Temporary Support Order was issued *ex parte* that date and summons issued with the request that the Sheriff serve the Defendant before 10:00 a.m. The Summons was returned November 18, 1982, unserved by the Sheriff who reported attempts at service in the morning and afternoon of November 17, 1982. Mrs. Glaze called Respondent in 'late November,' 1982, to inquire as to why her husband was not served. An alias summons was issued November 30, 1982, and served upon the defendant December 1, 1982.

"6. In February, 1983, Respondent called Mrs. Glaze and told her that he had received a written offer of settlement from the defendant's attorney. The letter from defendant's attorney to Respondent is dated December 29, 1982. A copy of

the letter was not provided to Mrs. Glaze. In the February telephone conversation Mrs. Glaze rejected the offer of settlement and proposed certain modifications. Respondent made no further contact with Mrs. Glaze concerning settlement of the divorce action.

"7. Around March 12, 1983, Mrs. Glaze received a letter from the Kansas Department of Revenue asserting a liability against her and her husband for additional income taxes for the year 1980. Mrs. Glaze attempted to reach Respondent by telephone at his office to discuss this letter and the fact that her husband was delinquent in the payment of the ordered temporary support. Mrs. Glaze called Respondent's office several times in late March and in April, 1983, requesting that he return her call. Respondent did not return any of Mrs. Glaze's calls and in May, 1983, she gave up trying to reach Respondent.

"8. Respondent was advised by postcard from the Court that the Glaze divorce action was set for trial on June 22, 1983. He had his secretary attempt to call Mrs. Glaze but Mrs. Glaze was not reached by Respondent's secretary. Respondent did not advise Mrs. Glaze of the trial setting by letter.

"9. On June 19, 1983, Mrs. Glaze's husband told her that the divorce action was set for trial June 22, 1983. On June 20, 1983, Mrs. Glaze secured the service of another attorney, Mr. Kiehl Rathbun. Mr. Rathbun represented Mrs. Glaze thereafter and concluded a settlement on June 22, 1983."

The panel concluded that respondent had again neglected a legal matter entrusted to him and recommended public censure. The respondent did not file any exceptions to this report.

On the 25th day of January, 1985, respondent and his counsel appeared before this court to make a statement with respect to the discipline to be imposed (Rule 212d, 232 Kan. clxviii). The Court was advised that during the relevant periods of time involved in the two complaints, respondent had been under undue stress for a number of reasons which was borne out by a report furnished the Court from the Wichita Counseling Center.

After due consideration of the entire record, statements of counsel, and being fully advised in the premises, the Court accepts the report, findings and recommendations of the Kansas Board for Discipline of Attorneys.

IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED that the said Marvin Pendergraft be and he is hereby disciplined by public censure and that he pay the costs of these proceedings.

IT IS FURTHER ORDERED that this order of public censure be published in the official Kansas Reports.

BY ORDER OF THE COURT dated this 2nd day of March, 1985.